MARVIN, Judge.
Defendant, a convicted felon, pleaded guilty to possession of a firearm (LRS 14:95.1) after his motion to suppress was overruled, and perfected this Crosby[1] appeal, contending that the motion to suppress should have been sustained because of false statements in the affidavit for the search warrant. CCrP Art. 162, State v. Paster, 373 So.2d 170 (La.1979). We find no error and affirm.
With a search warrant, police found a 12-gauge shotgun in the trailer occupied by *863 defendant, who, at the time of the search and the arrest, admitted that he was the owner of the trailer and that he had custody and control of the shotgun which he said belonged to another person. Defendant contends that alleged false information in the search warrant affidavit renders the warrant invalid and that the inculpatory statements were the fruit of an unlawful arrest based on the finding of the firearm. Defendant argues that the trial court failed to follow Paster and should have sustained the motion to suppress because he presented evidence of the falsity of the affidavit which shifted the burden of proof to the state which the state thereafter did not meet. He contends that the state should have shown either that the affidavit was true or that the affiant reasonably believed that it was true.
The affiant is officer Jay Via. His informants were Detective Fewell and, at an earlier time, Melba Hamilton. The essence of the affidavit states that officer Fewell told Via that he had met the night before with James Nichols shortly after Nichols had been drinking with defendant in defendant’s trailer, that James Nichols stated to officer Fewell that while in defendant’s trailer he saw defendant with a weapon “under his coat”, that “on prior investigation”, Via had learned from a woman who had dated the defendant, Melba Hamilton, that she had seen three shotguns or perhaps rifles in the defendant’s trailer about eight months before. Hearsay, even though doubled, is allowed and is not fatal to a search warrant affidavit. State v. Krolowitz, 407 So.2d 1175 (La.1981); State v. Paciera, 290 So.2d 681 (La.1974).
Defendant called James Nichols to testify at the suppression hearing. Nichols said he didn’t remember how defendant was dressed when Nichols visited defendant in the trailer some two months before the suppression hearing. “I just don’t remember. I’d had quite a bit to drink.” He said that at one time, “It looked like [defendant] was trying to hide something from me .. . [W]hat he has in his house is none of my business anyway. You know, if he don’t want me to see something that’s fine with me.”
Nichols acknowledged meeting with a police officer at a girl friend’s house and being taken to West Monroe by the officer. He acknowledged that other officers asked him “several questions ... about [the defendant].” “Like I said, we had been drinking that night ... and I don’t know exactly what all was said. This has been a while ago.” Nichols admitted that he told the officer “what had happened in [defendant’s] trailer.” Nichols was not asked to, and did not, deny that he had told the officer that he had seen defendant with a weapon in the trailer. Melba Hamilton was not called to testify.
Other witnesses called by defendant testified that they did not see defendant with a weapon on his person or in the trailer, that defendant was dressed in cut off trousers and was not wearing a coat or a jacket, and that defendant was attempting only to “hide” a woman in the bedroom of the trailer who feared that the visitor, Nichols, was her ex-boyfriend and would cause trouble. Defendant testified that Nichols, the woman at whose home the police talked to Nichols after he left the trailer and before he was taken to West Monroe, and the informant, Melba Hamilton, had grudges or reasons against him which would cause them to give biased and fabricated information about him to the police.
The testimony adduced by defendant at the suppression hearing is an attack upon the credibility of the informants, Nichols and Melba Hamilton, and is not directed at officer Via, the affiant in the search warrant affidavit. Immaterial inaccuracies in an affidavit do not affect the validity of a search warrant if, after excise of the inaccuracies, the affidavit contains sufficient facts and circumstances to support a finding of probable cause. CCrP Art. 162. State v. Feeback, 411 So.2d 10 (La.1982); State v. Krolowitz, supra; State v. Morstein, 404 So.2d 916 (La.1981); State v. Rey, 351 So.2d 489 (La.1977).
*864 Paster, supra, and its progenitor, Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), must be read together. Paster says if the defendant carries his burden of proving [materially] false statements in the search warrant affidavit, the burden then shifts to the state to prove either that the allegations are true or that the affiant reasonably believed his informant^) and thus had probable cause, citing State v. Rey, supra. Franks said that in the event the defendant meets his burden of. proof and the affidavit’s remaining content is insufficient to establish probable cause, the warrant is to be voided. 98 S.Ct. at 2676-2677.
Under the circumstances of this record, we can assume that the affidavit was untrue only to the extent that the defendant was not wearing a coat on the night Nichols visited his trailer. We cannot assume that Nichols gave other and more material information through detective Fe-well to the affiant, officer Via, that was contrary to the material assertions in the affidavit, (that the defendant had a weapon), or that officer Via included anything in the affidavit in reckless disregard of its truth. A showing of an immaterial inaccuracy, which may be excised from the affidavit without affecting its probable cause validity, does not meet the burden of proof required by Paster and Franks of a defendant in a suppression hearing. The language of Paster and Franks is to the effect that the burden shifts to the state in a suppression hearing when and only if defendant meets his burden of showing material falsity which would affect the validity of the affidavit.
Defendant’s conviction is AFFIRMED.

. State v. Crosby, 338 So.2d 584 (La.1976) allows such an appeal of a guilty plea where the defendant expressly retains his right to seek appellate review of pre-plea rulings which defendant urges are reversibly erroneous.