LOBRANO-, Judge.
This matter comes before the Court on a writ of certiorari sought by the State in response to the trial court’s granting of defendants’ motion to suppress. We granted the State’s application and now reverse the trial court’s decision for the following reasons.
The facts are as follows. On the morning of December 20, 1983 Officer Edmond Melder received information from a confidential informant who stated that he had purchased cocaine from an individual at a residence located at 3532 Elysian Fields Avenue within the preceeding 72 hours. The purported seller was a black male known as “Michael”. Officer Melder ran a computer check on the residence and found it to be occupied by Michael Augustine, one of the defendants herein.
At approximately 12:30 p.m., Officer Melder, along with Officer Wethren set up a surveillance of the residence. During the *79 surveillance, the following incidents were noted:
1. At 1:50 p.m. a single male approached on foot, entered the residence after knocking and left in about 5 minutes.
2. At 2:10 p.m. a blue automobile carrying three males drove up to the same residence. All three entered after knocking and stayed for approximately fifteen minutes, after which one of the males came to the sidewalk, looked around[1] and then motioned for the others to come out.
3. At 2:25 p.m. another single male walked up to the same residence, knocked at the door, and was seen to make an exchange of some sort at the doorway. The officers were unable to see what was exchanged.
After that particular exchange, Officer Wethern left the scene to obtain a search warrant for the residence. Shortly thereafter Officer Melder observed a blue Cadillac pull up in front of the subject premises. The three defendants emerged from the automobile and entered the residence. They returned to the car about 2:50 p.m. carrying a large paper grocery bag which was placed in the trunk. Fearing that the defendants were moving contraband from the residence, Officer Melder radioed Officers Austin and Dorion who were patrolling the area. The actions of those officers is best described by the testimony of Officer Dorion, which we quote in part:
“Officers Smith, Melder and Wethern were conducting a surveillance of Elysian Fields and requested assistance during that surveillance. Sometime during the surveillance Officer Wethern departed the area and proceeded to the office to prepare a search warrant, we were patrolling the area, if needed by them. About 2:45 p.m. we were advised that three black male subjects had exited the residence, one later identified as Michael Augustine was putting brown paper bags in the rear'of a blue Cadillac, didn’t know the year and they entered the vehicle, one subject in the back and two in the front. They asked us to follow the subjects, that they might be moving narcotics, that they might have found out about our surveillance and decided to move the narcotics, they walked out of the driveway and advised us that they were heading toward Elysian Fields towards the river. We fell in behind him, they drove the vehicle to the Interstate, got on the Interstate and were driving toward Slidell. We were directly behind them, my partner moved our vehicle adjacent to their vehicle on 1-10, we followed the vehicle and the 3 subjects in the vehicle, ...”
[[Image here]]
“... We recognized Estrada, we dropped back because they were in the right lane, we did not want them to pull off and leave us in the middle lane, so we dropped behind them, they got off at Franklin exit and made a right, heading toward the river again, we advised Det. Melder that we recognized Estrada, and we remained behind them. Det. Wethern came on the radio and said the search warrant would be signed in a few minutes and to keep the subjects in sight, we made a few turns along the way maybe five or ten minutes later, nor sure of the time, Det. Wethern told us he had the warrant in his hand and to stop the subjects. I asked him if he would return and return with us. We pulled them over at the intersection of Elysian Fields and Claiborne inside a gas station, don’t know the name of it. As we got out of the vehicle they jumped out of their vehicle in a — in a rush fashion — I was on the driver’s side as they got out, my partner advised me something had fallen by the driver’s door and to watch them, it rolled under the car, we put them in a position where our lives would not be in danger and I asked Munoz what his name was *80 and I learned he was Spanish, had trouble communicating with him and Augustine told me his name his name was Fernando Munoz, his other name was Sorror. My partner recovered the bottle and we discovered it was a bottle of cocaine. We advised the subjects they were under arrest, we conducted a search and removed a knife Munoz had concealed in his waistband under his shirt and under the front seat where Augustine was sitting we found a loaded revolver, and we opened the trunk of the vehicle, Det. Melder had reported that he saw the subjects put a brown paper bag there, there was a brown paper bag in the trunk and a plastic bag, the top of the bag was open and I could see the contents and on looking further the bag contained 8 lbs. of marijuana. The subjects were advised of their rights and transported.”
After hearing the testimony the lower court ruled as follows:
“The Court in reviewing the case and reviewing the testimony and the search warrant, the Court finds no probable cause for the issuance of the search warrant. The Court wonders why the search warrant, being obtained for the house and the police were armed with the information about the car, why a warrant wasn’t obtained for the car, for the trunk area. The Court in issuing its judgment herein sustains Defense Counsel’s Motion to Suppress Evidence in Case 299-606, as well as the companion case whatever that number is 2991622.”
In response to that ruling the State applied for these writs stating the issue as:
“Whether the objects taken from the automobile occupied by the three defendant may be admitted as evidence in the State’s case against them?”
In our opinion the sole issue in this case is whether or not Officers Dorion and Austin had probable cause to stop the blue Cadillac in which the three defendants were riding. They (the officers) had knowledge that the Elysian Fields residence was under surveillance by Officers Melder and Wethern. They knew that the three defendants were seen coming from the residence with a large grocery bag which was placed in the trunk, and they knew that Officer Wethern had obtained (or was in the process of obtaining) a search warrant for the Elysian Fields residence. In addition, Officer Dorion testified they recognized the driver of the vehicle, defendant Estrada, with whom they had personal experience in the past.[2]
The jurisprudence on automobile search and seizures since Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 has been confusing and complex. In an attempt to clarify this area the U.S. Supreme Court in the recent case of United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) held as follows:
“We hold that the scope of the warrant-less search authorized by the exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.” Id. at 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572.
The key to the application of the Ross, supra, holding in this case is whether or not the vehicle was legitimately stopped. We believe the officers had sufficient probable cause to stop the vehicle. Based on the surveillance of their fellow officers, the information obtained as a result of that surveillance, the information obtained from the confidential informant,[3] and the fact that the driver of the vehicle was recognized by the officers, we believe the officers acted properly. See, State v. Le- *81 Compte, 441 So.2d 249 (La.App. 4th Cir. 1983). The “totality of the circumstances test” approved in Illinois v. Gates, — U.S. -, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) convinces this Court that there was sufficient probable ’ cause to stop the vehicle. Once the vehicle was stopped, the Ross decision permitted the complete search of the vehicle.[4]
The ruling complained of is reversed and the motion to suppress is denied.

. The officers both testified that this male appeared "nervous” as he came out of the residence.

. Although the trial court sustained the defense’s objection concerning further questioning about Estrada’s past reputation, in view of the circumstances of this case we feel it would have been relevant and material.

. The reliability of the confidential informant had been verified to a certain extent by the computer check which revealed the residence as being occupied by Michael Augustine.

. We do not discuss the fact that a small vial of cocaine was allegedly seen to roll under the vehicle after it was stopped. Although it is argued that this alone was sufficient to justify a complete search of the vehicle, there is serious question as to whether it was actually seen to have fallen from the vehicle.