530 So.2d 1271 (1988)
STATE of Louisiana, Appellee,
v.
Robert LOERA and Joni Doherty, Appellant.
No. 19746-KA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1988.
Rehearing Denied September 15, 1988.
*1273 Richard C. Goorley, Shreveport, for appellant, Robert Loera.
Wellborn Jack, Jr., Shreveport, for appellant, Joni Doherty.
William J. Guste, Jr., Atty. Gen., Don M. Burkett, Dist. Atty., Robert E. Burgess, Asst. Dist. Atty., for appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
MARVIN, Judge.
These appeals, entered with a Crosby reservation to gain review of the trial court's rulings on defense motions, are made by co-defendants who were jointly indicted, with others, for the crimes of manufacturing methamphetamine and possessing methamphetamine with intent to distribute. Defendants bargained to plead guilty in return for specific sentences and for the dismissal of some of the charges against them in the joint indictment.
The trial court denied each defendant's motion to suppress evidence after conducting separate hearings. Each motion to suppress attacked the sufficiency of the affidavit for a search warrant which was used to seek and find the incriminating evidence. The alleged insufficiency is assigned by each defendant as an error.
Ms. Doherty raises two additional assignments which question the denial of her motion to recuse the trial judge because his daughter was an assistant district attorney (though not involved in the prosecution of this case) and the denial of her motion for a mistrial that was made when the trial court defined for the prospective jurors the meaning of the term reasonable doubt.
Under the circumstances of this record we find no reversible error and affirm the convictions.

FACTS
The investigation began in the spring of 1986 when a DeSoto Parish Sheriff's Office detective, Cobbs, was told by an anonymous "concerned" citizen in a telephone call that "if you want to make a good dope case check into Robert Loera who lives south of Stanley, Louisiana, who [is] connected with John M. Crawford that lives on Regina Street in Mansfield ..." The anonymous caller also told Cobbs that Loera was of Mexican descent, from Austin, Texas, and had acquired a house in April 1986 in the Hunter community, a rural area of DeSoto Parish.
Lt. Davidson, a DPSO narcotics officer, then contacted the narcotics division of the Austin Police Department. An Austin narcotics officer reported to Davidson that he "knew Robert Loera personally, and knew lots about his illegal activities involved in drugs." Loera's criminal record in Texas consisted of 17 arrests, 11 involving "dangerous drug" charges, with three drug convictions out of a total of nine convictions.
According to the Texas records, Loera was "known to carry arms" and was also known by the name Robert Ybarra Loera or Alfredo Flores. A narcotics detective in Austin reported that Loera was "mentioned as a close associate" of Robert Henry Davis, Jr. and that Davis was "a major *1274 methamphetamine manufacturer in Texas... who is in a federal penitentiary serving 15 years on methamphetamine charges." According to the Texas detective, Loera was "known as a major heroin smuggler."
With the above information in mind and hand, Davidson and Cobbs began surveillance of Loera's residence and started checking license plate numbers of vehicles seen there. In late spring or early summer 1986, these officers placed a trailer about 100 yards from Loera's house for closer and more frequent observation. About the second week in June 1986, they began observing a small amount of smoke or steam coming out of the chimney of the Loera house. On July 31, they saw Loera, Ms. Doherty and Jimmy Taylor arrive at the house. Ms. Doherty had no criminal record in Texas. They learned that Taylor lived in Mansfield and had a record of 12 arrests, including one in Austin, Texas, and that six of his arrests were on drug charges.
Between 8:30 p.m. and 2:45 a.m. on July 31, the officers saw either or both Loera and Taylor go back and forth between the house and the yard at least 50 times. Three times after 11:00 p.m. on that night, the officers saw Loera and Taylor place something, later proved to be flammable, in a large barrel outside the house, and ignite the substance which produced flames similar to those produced when gasoline is burned. After daylight, Loera and an unknown Mexican male were observed taking the back seat out of a Pontiac with Texas license plates registered to a woman in Mission, Texas, whose address was the same as the address of one Homer Garcia who had been seen at Loera's house. The officers knew that Garcia had a record of 15 arrests, four involving drugs, and two convictions.
Ms. Doherty, her two children and an unknown male of Mexican descent stayed at the Best Western Motel in Mansfield from Friday, August 22, until Monday, August 25. Doherty was driving a Buick with Illinois tags which a later check showed was registered in the name of Joni Godar, Doherty's married name. The male was driving a Lincoln with Texas tags. Confidential sources at the motel reported that two phone calls were made from the room, one to Loera's home and the other to the Continental Trailways bus station in Mansfield. After Doherty and the others checked out of the motel, Lt. Davidson, with permission of the motel manager, went into the room occupied by Doherty and found a syringe in the waste basket. He did not have it tested or analyzed for CDS residue.
Doherty again rented a room at the same motel on Friday, August 29. On that day, another room in the motel was rented by Robin Burtchell, a female from Austin, Texas, who shared the room with a male, Pat Ainsworth, also of Texas. The officers learned from Texas authorities that Ainsworth was on probation in Texas following a conviction involving 20 pounds of marijuana. The officers noted that Burtchell and Ainsworth stood outside the door of Doherty's room for a minute or so on August 31 but did not see them knock on the door or make physical contact with Doherty. Doherty's Buick was also seen at Loera's house on August 31.
On September 1, the officers saw a Mexican male wearing a gas mask go from Loera's house into the back yard. A few minutes later this male brought some large pots out of the house and washed them. At about the same time, Loera and Doherty were seen packing ice chests, sacks and boxes into Doherty's Buick. Sensing that the operation was coming to an end, Lt. Davidson left to get a search warrant while Det. Cobbs stayed in the surveillance trailer.
September 1 was Labor Day in 1986. Lt. Davidson, seeking the search warrant, unsuccessfully attempted several times to locate the two district court judges in the 11th Judicial District, composed of DeSoto and Sabine parishes. He then succeeded in contacting Judge Ware, the district court judge in neighboring Red River Parish, in the 39th Judicial District. He went to Coushatta with the search warrant affidavit, which contained most, but not all, of the facts we have summarized. A copy of *1275 the affidavit is attached as an unpublished appendix to this opinion.
Judge Ware signed the search warrant that authorized a search of Loera's home in DeSoto Parish and of several vehicles seen on the premises, including Doherty's Buick.
Lt. Davidson was returning to Loera's house with the search warrant when Det. Cobbs radioed him that the Doherty Buick was leaving Loera's house. Lt. Davidson found and followed the Buick to a grocery store. There he saw Ms. Doherty buy several bags of ice and then drive back to Loera's house. A few minutes later, Doherty and her children left in the Buick. Lt. Davidson stopped the car a short distance from the house and searched it, believing that the search warrant authorized the search. He found five pounds of methamphetamine inside a package of disposable diapers in the trunk. Other officers also executed the warrant and searched Loera's house. They found small quantities of methamphetamine, marijuana and heroin, a methamphetamine laboratory, and other items not related to the drug charges.

DOHERTY'S RECUSAL MOTION
The 11th Judicial District is made up of two parishes, Sabine and DeSoto. One of the assistant district attorneys in that district is the daughter of one of the two judges of the district.
Ms. Doherty moved to recuse the trial judge, before trial began, on allegations that the trial judge
(2) ... is related to ... the district attorney... within the second degree [and]

. . . . .
(6) [w]ould be unable, for any other reason, to conduct a fair and impartial trial. C.Cr.P. Art. 671, in part.
Ms. Doherty contended that because the trial judge's daughter was employed as an assistant district attorney by the district attorney who was prosecuting Ms. Doherty's case, the trial judge had "ties to the prosecution" which could affect rulings on questions of law during trial to the detriment of Ms. Doherty.
The State asserted that the judge's daughter does not handle cases in which her father is the judge. Ms. Doherty does not assert that the judge's daughter was involved in the prosecution of the instant case. The judge's daughter made no appearances in this record for the State.
C.Cr.P. Arts. 8, 934(5) effectively state that the term district attorney includes assistant district attorney unless the context in which the term is used clearly indicates otherwise. Ms. Doherty contends that Art. 671(2), which requires recusal of a trial judge when he is related in the second degree to the district attorney, does not clearly indicate that the term district attorney excludes an assistant district attorney of the same district.
The meaning of the term district attorney, when used in provisions about prosecutorial recusation under C.Cr.P. Art. 680, does not include an assistant district attorney. The Official Revision Comment under Art. 680 explains that the recusation procedures clearly contemplate recusal of the district attorney himself and appointment of a district attorney ad hoc by the judge.
When an assistant district attorney becomes unavailable, for whatever cause, the district attorney appoints the substitute... Recusation is a proceeding which is, by the nature of the procedures followed, not applicable to the assistant district attorney. West's LSA-Criminal Procedure, Vol. 2, p. 343.
The Official Revision Comment about Art. 671(2), Grounds for recusation of judge, states
Ground (2) follows C.C.P. Art. 151(4) in specifying the degrees of relationship which will serve as a ground for recusation of the judge. Accord: Art. 303 of the 1928 Code of Criminal Procedure. In addition, ground (2) clarifies the language by specifying that the district attorney is one of the attorneys to whom the relationships apply. West's LSA Criminal Procedure, Vol. 2, p. 309. Emphasis supplied.
*1276 When we consider together the recusal articles and official revision comments (C.Cr.P. Arts. 671(2) and 680) that speak of a judge being recused because of his relationship to the district attorney and of an assistant district attorney being unavailable or disqualified because of a relationship that may appreciably influence him or her, we must conclude that it is clearly indicated that the term district attorney in Art. 671(2) means only the district attorney and does not include an assistant district attorney as contemplated by C.Cr.P. Arts. 8 and 934(5). See and compare State v. Edwards, 420 So.2d 663 (La.1982).
We therefore hold that a trial judge is not required to recuse himself or herself from a criminal case when that judge's relative within the second degree is employed as an assistant district attorney in matters other than the criminal case in which that judge is or may be presiding.
A 671(2) motion to recuse this same trial judge because of his daughter's employment as an assistant district attorney was made in a Sabine Parish proceeding in 1985. State v. Michael Kevin Speight, K85-739, September 5, 1985, La.App.3d Circuit, unpublished. The trial judge denied the motion to recuse. Writs were denied by the 3d Circuit and then by the supreme court.[1]State v. Speight, 477 So.2d 1132 (La.1985).
Ms. Doherty alleges additionally a 671(6) ground to recuse (the trial judge would be unable to conduct a fair and impartial trial) that was not alleged in Speight, supra. Speight, even though a writ disposition, and notwithstanding the mentioned distinction, is more squarely in point than cases which have considered a motion to recuse a judge in other relational circumstances. See and compare State v. LeBlanc, 367 So.2d 335 (La.1979); State v. Browning, 475 So.2d 90 (La.App.2d Cir. 1985), reversed at 483 So.2d 1008 (La.1986); and State v. LaCour, 493 So.2d 756 (La. App.2d Cir.1986), writ denied. In any event, it would be incongruous to pronounce a result that would forbid this trial judge from presiding over criminal cases in DeSoto Parish when he has been allowed to preside over criminal cases in Sabine Parish.
Ms. Doherty's 671(6) contentions that the trial judge's "ties to the prosecution" could cause him to rule unfairly to her prejudice factually reiterate the 671(2) allegations. The 671(6) allegations, other than in the relationship context, are therefore found to be conclusory, factually unsupported, and insufficient to require recusal or referral of the recusal motion to another judge for hearing. See C.Cr.P. Art. 674 and State v. Edwards, supra.

TERRITORIAL JURISDICTION
C.Cr.P. Art. 161 allows a judge to issue a warrant authorizing the search for and seizure of contraband or evidence "within the territorial jurisdiction of the court." Loera contends the items seized from his house should have been suppressed because the Red River Parish judge did not have "territorial jurisdiction" in DeSoto Parish.
LRS 13:586 provides:
When it is proved that all the judges of any judicial district are absent from their judicial district, or are otherwise unable to act, any district judge of an adjoining judicial district may grant any orders that the absent or incapacitated judges could grant, if present.
A search warrant is a court order authorizing law enforcement officers to conduct a search. It is an order that either judge of the 11th Judicial District could have signed if he had been available.
Judge Ware, the Red River Parish judge who signed the warrant, testified Lt. Davidson contacted him on a holiday, he believed "probably" at his home. Lt. Davidson gave this explanation of the efforts he and others made to locate either of the two judges in the 11th Judicial District before he contacted Judge Ware:

*1277 I called at Judge Sledge's residence [in DeSoto Parish], no one answered. I checked his office, no one answered. I had Sabine [Parish] Sheriff's Office call or check for Judge Pickett and they did not find him and didn't know where he was at, he was out of town or something, couldn't find either one of them, so that is when we called Coushatta to Red River Parish. It was a holiday and hard to find anybody.
The officers had observed activities at Loera's house on September 1 which indicated the suspected drug operation on the premises was ending. One of the vehicles at the house was being packed to leave apparently with things sought in the search warrant. The affidavit had been started and supplemented during the investigation and needed only a description of the September 1 observations to finalize it, according to the officers. Lt. Davidson needed the warrant on a holiday and could not reach one judge at his office or at his home in DeSoto Parish. The other district court judge, who lived in Sabine Parish, was reported by the Sabine Parish Sheriff's Office to be out of town.
The record allows the conclusion that both judges of the 11th Judicial District were absent or unavailable notwithstanding reasonable efforts to contact them under the circumstances. Judge Ware was statutorily authorized to sign the warrant to search and seize property outside of his territorial jurisdiction. We hold that LRS 13:586 creates an exception to the territorial limitation contemplated in C.Cr. P. Art. 161.
Even if we assume arguendo that § 586 does not apply to search warrants, the remedy for a violation of the Art. 161 territorial limitation would not be to suppress the evidence seized under execution of the warrant. State v. Matthieu, 506 So.2d 1209 (La.1987).
There a search of defendant's home in St. Martin Parish was conducted with a warrant issued in Lafayette Parish, part of a different judicial district. Defendant's home was only 100-150 yards outside of Lafayette Parish, in an area where three parishes converged. The court upheld the denial of defendant's motion to suppress that was founded on the alleged violation of Art. 161's territorial restriction:
The primary purpose of the exclusionary rule is to deter future unlawful police conduct. It is designed not to redress the injury to the privacy of the victim of the search, but to deter unconstitutional methods of law enforcement. The rule is thus not to be imposed in a vacuum or administered automatically or mechanically, but is to be applied with its deterrent effect in mind. It does not purport to reach all illegal conduct of officers, and does not apply to deter wrongful or improper official conduct that does not violate a person's reasonable expectation of privacy under the Fourth Amendment ....
[CCrP. Art.] 703(A) provides a defendant adversely affected may move to suppress any evidence from use at trial on the ground it was unconstitutionally obtained.... the search here was violative of a procedural rule, Art. 161 of the Code of Criminal Procedure ... this technical error was due to confusion as regards the parish in which defendant's home was located ... there is no evidence here of any misconduct on the part of the police such as "judge shopping." 506 So.2d at 1212, 13; citations omitted. Our emphasis.
In State v. Bickham, 404 So.2d 929 (La. 1981), defendant was arrested by officers who began pursuing him within, but apprehended him outside, their territorial jurisdiction. The court rejected defendant's argument that the evidence found in his car when he was stopped should have been suppressed because of the territorial restriction.
Even if it is assumed that the officer ... acted outside of his territorial jurisdiction, the officer's conduct amounts to nothing more than a good faith statutory violation of a rule designed, not for the purpose of preventing unreasonable invasions of privacy, but for the delineation of the territorial zones of responsibility of various law enforcement agencies.

*1278 Exclusion of reliable evidence obtained in an otherwise legal and good faith seizure would not serve the administration of justice or the purpose of the legislative directive of territorial responsibility. 404 So.2d at 933.
The evidence against Loera was likewise obtained in an otherwise legal and good faith seizure. As in Matthieu, supra, we have no evidence of any police misconduct or "judge shopping." We have no evidence that Judge Ware acted other than in a neutral and detached manner. He was statutorily authorized to act when the judges in the 11th Judicial District were absent or unavailable. Because the evidence was not "unconstitutionally obtained," suppression under C.Cr.P. Art. 703 is not warranted.

PROBABLE CAUSE
Both defendants contend the search warrant affidavit did not establish probable cause. Loera argues its deficiencies with respect to the search of his house and Doherty, with respect to the search of her car.
Loera claims the affidavit
(1) does not show the reliability of the initial informant or his information;
(2) does not identify any criminal activity during the police surveillance which would corroborate the tip;
(3) does not give probable cause to believe any controlled substances would be found in the house;
(4) contains intentional misrepresentation; and
(5) is based primarily on stale information.
A search warrant may issue only upon an affidavit reciting facts which establish to the satisfaction of the issuing magistrate that probable cause exists to search the place described in the warrant. Probable cause exists when facts and circumstances, within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Guidry, 388 So.2d 797 (La.1980).
The affidavit must satisfy the magistrate that the charges are not capricious and that there is a fair probability that contraband or evidence of a crime will be found in the place to be searched. Probable cause is based on probabilities of human behavior, as understood by trained law enforcement officers, and not on certainties, or on proof beyond a reasonable doubt. The affidavit need not eliminate all possible innocent explanations of the described behavior. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Rodrigue, 437 So.2d 830 (La.1983); State v. Lehnen, 403 So.2d 683 (La.1981).
If the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, reviewing courts should interpret the affidavit in a realistic and commonsense fashion, aware that it is normally prepared by nonlawyer police officers in the midst and haste of a criminal investigation. Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers. U.S. v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The reviewing court may not substitute its judgment for that of the magistrate, but must simply decide whether the magistrate had a substantial basis for finding probable cause. Illinois v. Gates, supra; State v. Ogden, 391 So.2d 434 (La.1980).

SEARCH OF HOUSE
The search of Loera's house ended an investigation which began several months earlier with the anonymous citizen's phone call. In response, Lt. Davidson telephoned the Austin Police Department and spoke to an officer who knew Loera personally. Loera's criminal record in Texas was obtained. This record included many drug-related arrests and several convictions. A narcotics detective in Austin reported that Loera had been considered to be an associate of another who manufactured methamphetamine in Texas and who was in federal prison on methamphetamine charges. The *1279 detective also reported that Loera was known for smuggling heroin.
During their surveillance of Loera's home in rural DeSoto Parish, the officers saw, on different occasions a month or so apart, smoke or steam coming out of the chimney after June 1. They saw Loera and Jimmy Taylor igniting three "batches" of a flammable substance in a barrel in the yard between 11:00 p.m. and 2:30 a.m. at the end of July. They saw a man wearing a gas mask who went from the house into the back yard and there washed some large pots on September 1.
Loera concedes that these activities were unusual and perhaps suspicious, but argues that they were insufficient to corroborate the original "vague" tip because the police did not see a crime being committed and no one had reported seeing drugs inside the house.
These excerpts from Illinois v. Gates, supra, answer Loera's argument:
The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place ....
[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to ... impose a drastically more rigorous definition of probable cause than the security of our citizens demands.... In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts. 103 S.Ct. at 2332, fn. 13 at 2335. Our emphasis.
The affidavit as a whole gives a reasonable basis for attributing a significant degree of suspicion to the conduct observed at Loera's house. After receiving the initial tip, officers immediately took steps to corroborate the anonymous tip and remained in contact with Austin, Texas, authorities. They established surveillance of the house to corroborate the information they received from Austin. Some of the weekend motel stays of either Loera or Doherty and her two children occurred about the same time that suspicious activities, one involving a flammable substance and the other a gas mask, were observed at the house. According to Lt. Davidson's testimony, "it is commonly known that the manufacture of methamphetamines is dangerous... it can blow up easily and it makes a terrible odor." He stated in the affidavit that the small amount of smoke or steam seen coming out of the chimney of the house in June 1986 was "concurrent [consistent?] with a possible methamphetamine laboratory."
These activities, observed after the initial tip and the contact with Austin, corroborated the officers' suspicion of Loera's drug involvement and gave them and Judge Ware a factual basis for reasonably expecting that contraband would be found in the house. Probable cause to search is based on facts which would warrant a person of reasonable caution to believe that the articles sought are located at the place to be searched. Firsthand observation of criminal activity or contraband in the place to be searched, either by a police officer or by an informant, is not required to establish probable cause. State v. Guidry, supra; Illinois v. Gates, fn. 13, quoted above.
Although Loera's reputation for, or record of, illegal drug activity would not, standing alone, establish probable cause, it is "a practical consideration of everyday life upon which an officer or magistrate may properly rely in assessing the reliability of an informant's tip." State v. Baker, 389 So.2d 1289, 1293 (La.1980). The suspicions generated by the tip and by Loera's history were buttressed by the various activities which the officers saw firsthand at Loera's house and described in the affidavit. See and compare State v. Williams, *1280 338 So.2d 1365 (La.1976), and State v. Tate, 407 So.2d 1133 (La.1981).
Loera devotes 20 pages of his brief to arguments that the affidavit contains false statements and selectively omits relevant facts to "puff up a facade of criminality." We have reviewed each statement and omission Loera complains of in the light of the testimony of Lt. Davidson and Det. Cobbs at the hearing on Loera's motion to suppress. We conclude that Loera has not borne his burden of proving that the officers made deliberate misrepresentations or material, intentional omissions in the statements that Loera challenges.
If, from the affidavit, as the cases direct, we excise any unintentional misrepresentations, add any facts omitted without an intent to deceive the magistrate, and reassess the affidavit, we find that the affidavit establishes probable cause to search the house. See and compare State v. Mann, 431 So.2d 862 (La.App.2d Cir.1983), writ denied; State v. Hudgins, 519 So.2d 400 (La.App.2d Cir.1988), writ denied; and cases cited therein.
Loera further contends that because the affidavit describes activities observed at the house over a period of two and a half months, from mid-June until September 1, the search warrant was primarily based on "stale" information.
Correctly stated, the issue is whether the passage of time renders the facts supporting probable cause so attenuated as to defeat the inference that the object sought may still be found on the premises. This issue is resolved according to the facts and circumstances of each case. Among the factors to be considered are whether the object, from its nature, can be expected to be retained on the premises and whether the evidence indicates that the course of conduct is continuing. State v. Ogden, supra.
The objects sought from Loera's house were primarily illegal drugs. Surveillance continued without significant interruption during the period from mid-June to September 1. When the officers observed and described in the affidavit activities consistent with the manufacture of methamphetamine, the last indication of which they saw on the day the warrant was issued, the magistrate was given good reason, probable cause, to believe that illegal drugs were being produced on the premises and would be kept inside the house. The warrant was not based on "stale" information. Compare factually State v. Chaffin, 324 So.2d 369 (La.1975), and State v. Tate, supra.

SEARCH OF CAR
Doherty contends the search warrant affidavit did not establish probable cause to search her car and was so lacking in indicia of probable cause with respect to the car that it cannot be upheld even under the "good faith" exception to the exclusionary rule recognized under the Fourth Amendment in U.S. v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and under Art. 1, § 5 of the Louisiana Constitution in State v. Wood, 457 So.2d 206 (La. App.2d Cir.1984).
We shall assume arguendo the correctness of Ms. Doherty's contention, but shall nevertheless find her motion to suppress was properly denied because facts and circumstances known to the officers, but not fully described in the affidavit, established for them probable cause to search her car and its contents without a warrant. U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed. 2d 572 (1982). We make the assumption because of the following circumstances relating to the affidavit.
The affidavit seeks authority to search "a Buick with Ill. tags JGJ874." There is only one reference to the car in the section of the affidavit reciting facts to show probable cause: "Joni Doherty was driving a 1975 Buick with Illinois tags" when she stayed at the Best Western Motel in Mansfield over the weekend of August 22-25. The affidavit does not say that the Buick was registered in her name. It describes other instances in which she was seen at Loera's house in a "red Pontiac" or in one of "three [unidentified] automobiles." The affidavit fails to state that the officers had *1281 seen the Buick at Loera's house on August 31 and on September 1.
With respect to the Buick, the affidavit may be in the "bare bones" category because the sole reference to the car is attenuated in time and place from the activities at the house, where drugs were reasonably expected to be found. We therefore assume the affidavit would not support an objectively reasonable belief that evidence or contraband would be found in the Buick. See and compare U.S. v. Leon, supra, and State v. Wood, supra.
We shall uphold, however, the search without a warrant of Doherty's car.
For constitutional purposes, there is no difference between, on the one hand, seizing and holding a car before presenting the probable cause issue to a magistrate, and on the other hand, carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the federal and state constitutions. See State v. Tatum, 466 So.2d 29, 31 (La.1985), and cases cited therein.
The permissible scope of warrantless automobile searches was recently defined in U.S. v. Ross, supra:
[A]n individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband....
[T]he scope of the warrantless search ... is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. 102 S.Ct. at 2172, 2173.
We conclude the officers had the requisite probable cause to stop and search the car and its contents. They saw the Doherty Buick at Loera's house the day before the warrant was sought and again the next day, when Loera and Doherty were seen loading it, apparently for departure, at about the same time that someone else was seen exiting the back door of the house wearing a gas mask and washing out some large pots. If these facts had been described in the affidavit, Judge Ware would have had a substantial basis for finding probable cause to search the car, the trunk, and the containers in the trunk, for drugs.
Det. Cobbs continued watching the car while Lt. Davidson went to get the search warrant. When Lt. Davidson was returning with the warrant and was contacted by radio, he followed the Buick from Loera's house to a grocery store. There he saw Doherty load bags of ice and drive back to the house. Within a few minutes, Doherty and her children left the house in the Buick. Under all the circumstances, there was a fair probability that Doherty's car was transporting some of the drugs suspected to have been produced at Loera's house. The search of the car was valid as a warrantless search. Compare factually State v. Bradley, 446 So.2d 803 (La.App.2d Cir.1984), writ denied, and State v. Augustine, 449 So.2d 78 (La.Ap. 4th Cir.1984), writ denied. The facts establishing probable cause to support the search of the Buick were articulated by the officers in this record.

REMARKS TO JURORS
Before jury selection began, the court made some preliminary remarks to the prospective jurors explaining voir dire, courtroom procedure and the duties of those jurors chosen to serve. Doherty contends the court improperly shifted to her the burden of proving a good reason for the jury to not convict her when the court defined reasonable doubt to the prospective jurors as "one that you can give a good reason for."
The remark refers to doubt that each juror could give a good reason for. It does not require the defendant to explain or remove doubt from the jurors' minds. The remarks defining reasonable doubt were preceded by this explanation of the "presumption of innocence":
One of the things that the attorneys will question you about is your understanding *1282 of the "presumption of innocence" which each accused person has when he, or she, comes before the court.
This means very simply that when a person comes before the court, accused of a crime, the fact that he, or she, is accused of a crime does not mean that the defendant is before the court because he, or she, is presumed to be guilty. On the contrary, the legal presumption is that he, or she, is innocent of any criminal wrongdoing. In the trial of the case the defendant is not required to prove that he, or she, is innocent, because his, or her, innocence is presumed.
In the trial of the case it is the district attorney's responsibility to remove this presumption of innocence, if he can, by introducing into evidence proof that the defendant is guilty.
It is not sufficient that the evidence introduced by the district attorney proves that the defendant "seems" to be guilty or that the defendant "might be" guilty of the offense with which he or she is charged, but the evidence introduced in the trial of the case must prove, "beyond a reasonable doubt" that the defendant is guilty.
The risk that a prospective juror would construe the reasonable doubt remark as Doherty construes is minimal when it is read in context with the explanation of the presumption of innocence.
A jury trial begins when the first prospective juror is called for examination. C.Cr.P. Art. 761. The remedies of mistrial and admonition are available only for prejudicial remarks made "during the trial or in argument." Arts. 770, 771. Even should we assume that the remark Ms. Doherty complains of was made during trial or in argument, we find the remark, in proper context, was not prejudicial or potentially prejudicial. Ms. Doherty's motion for mistrial or admonition was properly denied.

DECREE
The convictions of both defendants are AFFIRMED.

ON APPLICATION FOR REHEARING
Before MARVIN, NORRIS, LINDSAY, HALL and JASPER E. JONES, JJ.
Rehearing denied.
NOTES
[1] Sabine Parish is in the 3d Circuit Court of Appeal. DeSoto Parish is in the 2d Circuit Court of Appeal.