STEWART, J.
| Nhe State of Louisiana (“the state”) applied for supervisory review of a trial court’s ruling granting a motion to suppress filed by the defendant, John Emmitt Gates, who was charged with DWI, third offense. The basis of the motion to suppress was that the stop was made by an officer outside of his jurisdiction. Finding that the trial court did not abuse its great discretion in granting the defendant’s motion to suppress, we now affirm.
FACTS
The following evidence was adduced at the hearing on the defendant’s motion to suppress. At around 9:00 p.m. on November 11, 2011, Brian Bell, a Haughton police officer, was sitting in his patrol car on a service road on the northeast side of the intersection of Hwy. 3227 and La. 157 adjacent to 1-20. He was on duty and within the Haughton city limits. From his location, he could see traffic coming in all directions. He had noticed nothing out of the ordinary.
A small white SUV pulled up beside his patrol car. The two occupants, a man and a woman, were costumed. They reported that a blue pickup truck had almost run them and others off the roadway while traveling on 1-20. They also reported that *540 the truck had just headed east on Hwy. 3227. Officer Bell believed that they identified the truck as a Chevy.
Officer Bell proceeded east on Hwy. 3227 to look for the blue truck. He explained that Hwy. 3227 runs within Haugh-ton’s city limits for about a half-mile, exits the city limits for about a quarter-mile, and then re-enters the city limits again for another mile. Traveling at speeds of up to 78 miles per hour, Officer Bell located within two to three minutes a dark-colored struck, which he believed was a Dodge. The truck was near the intersection of Hwy. 3227 and Hwy. 164, which is an area outside the Haughton city limits. He testified that the truck was about 200 yards south of his position and that he could see the double yellow lines of the highway under the truck, which was “jacked up fairly high.” Officer Bell turned onto Hwy. 164 and began approaching the truck. He testified that the truck veered into the other lane of travel while negotiating a curve. At this time, he notified the Bossier Parish Sheriffs Office that he was about to make a stop. He testified that he did not ask for permission to make the stop but merely notified the sheriffs office that he was doing so.
According to Officer Bell, the truck turned onto Boomtown Road and came to a stop at the stop sign at Boomtown Road and Hwy. 614. He denied doing anything to bring the defendant to a stop. Officer Bell testified that he pulled up behind the defendant’s truck and activated his lights, at which point the patrol car’s video recorder backed up from 30 seconds to two minutes. Officer Bell was not certain of the exact backup time set by his supervisor. Both Officer Bell and the defendant exited their vehicles. Officer Bell inquired whether the defendant needed medical assistance and than directed him to sit on the bumper of his car. Within five to six minutes, Officer Travis Orr of the sheriffs department arrived. Officer Orr conducted the DWI investigation and arrested the defendant.
The defendant testified that he was traveling southbound on Hwy. 164 and that he turned onto Boomtown Road because he saw lights and believed he was being stopped by the police.
|sThe video recorded from Officer Bell’s car was entered into evidence. It begins with the taillights of the truck some distance ahead of Officer Bell as the two vehicles travel along a highway. The video does not appear to depict the truck driving over the double yellow lines at this point. The truck negotiates a curve the same time as an oncoming vehicle. Immediately after, the truck makes a quick wide right turn, apparently onto Boomtown Road. The truck then veers into the left lane and back across to the right where it stops off the road in the shoulder area. The defendant immediately exits his vehicle. At that point, flashing is visible from Officer Bell’s car. Officer Bell exits his patrol car to meet the defendant. The video does not appear to show flashing lights before this point, but Officer Bell did testify that his patrol car has settings for rear deck lights, mirror strobes, and a flashing center deck light. The video shows Officer Bell directing the defendant to sit on the front bumper of his patrol car. Officer Bell speaks into his handheld radio and obtains the defendant’s driver’s license. There does appear to be some ongoing conversation until the arrival of Office Orr, who begins the DWI investigation. Lastly, we note that the truck shown on the video does appear to have a Chevy emblem on its tailgate; it is not a Dodge as indicated by Officer Bell in his testimony.
After taking the matter under advisement, the trial court ruled in favor of the *541 defendant, granting his motion to suppress. In its written ruling, the trial court found any discussion of the concept of “hot pursuit” to be inapplicable. The trial court characterized the individuals in the white SUV as anonymous tipsters and noted that Officer Bell did not obtain any 1 ¿identifying information from them and had no way to test the reliability of the information they provided. Additionally, the trial court noted that the vehicle would have traveled in front of Officer Bell, yet he did not observe any erratic driving or traffic violations at the intersection where he was parked. The trial court found that Officer Bell’s observations of traffic violations by the defendant would have occurred outside Haughton’s city limits. From viewing the video, the trial court found that the defendant pulled to the shoulder of the road, not directly in front of the stop sign. The court stated that a reasonable person could “conclude that this maneuver was executed in compliance with the police units [sic] lights being activated.” Utilizing the factors set forth in State v. Williams, 45,775 (La.App.2d Cir.8/27/10), 46 So.3d 262, the court found that Officer Bell, who was outside his jurisdiction, failed to obtain permission to make the stop. Thus, the trial court ruled that all information discovered subsequent to the detention must be suppressed.
From this adverse ruling, the state applied for supervisory review. This court granted the state’s writ and ordered the parties to file briefs. The matter is now before this court for a full review.
DISCUSSION
Great discretion is vested in the trial court when ruling on a motion to suppress, and its ruling will not be disturbed on appeal absent an abuse of that discretion. State v. Long, 03-2592 (La.9/9/04), 884 So.2d 1176, cert. denied, 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005); State v. Horton, 01-2529 (La.6/21/02), 820 So.2d 556. At issue is whether the trial |ficourt abused its discretion in ruling that evidence obtained as a result of the stop by a Haughton police officer outside of his jurisdiction must be suppressed.
The arguments of both the state and the defendant center on this court’s opinion in Williams, supra, which also involved a motion to suppress evidence obtained from a traffic stop that resulted in a prosecution for a third offense DWI. The trial court granted Williams’ motion to suppress because the officer who arrested him was outside his jurisdiction. The officer was not in hot pursuit from his jurisdiction and did not have probable cause to believe that a felony had been committed or was being committed. This court reversed the granting of the motion to suppress but remanded to the trial court for it to determine whether the arresting officer’s actions comported with the mandates outlined in the opinion. Balancing the great danger posed by drunk drivers with the need to make sure that stops by law enforcement officers outside their jurisdictions are reasonable under the Fourth Amendment, this court set forth the following four limiting factors to govern when officers outside their jurisdictions may stop a vehicle:
1. The officer must personally observe a driver operating a vehicle in an erratic manner, so as to cause the officer to reasonably believe the driver is impaired and is a danger to the public;
2. The officer must be in a marked vehicle;
3. The officer must contact an officer having jurisdiction and get permission to effectuate the stop; and
4. The officer who has jurisdiction must conduct the investigation.
*542 In State v. Stapa, 45,773 (La.App.2d Cir.8/27/10), 46 So.3d 264, writ denied, 2010-2126 (La.11/19/10), 46 So.3d 391, a companion case decided the same time as Williams, supra, this court reversed the trial court’s suppression of evidence obtained as a result of a stop by a Greenwood police officer outside of her jurisdiction. In that case, the officer while driving home in her marked unit witnessed the defendant swerve three times. The officer called a state trooper, who told her to “light him up” but remain in her cruiser. The trooper arrived shortly thereafter and arrested the defendant. Noting the specific facts leading to the stop and the grave dangers posed by drunk driving, this court found that the stop did not violate the constitutional protections against unreasonable seizures.
Though the Stapa opinion does not set forth the specific limiting factors as in Williams, supra, each was met. The Greenwood officer was in a marked vehicle, personally observed the erratic driving, contacted an officer in the jurisdiction, and obtained permission to make the stop. Finally, an officer with jurisdiction conducted the investigation. The Stapa court concluded that the combined actions of the two officers were reasonable and did not violate the “ultimate touchstone” of the Fourth Amendment-reasonableness.
The Williams and Stapa opinions set forth the parameters of a constitutionally reasonable traffic stop of a vehicle by a law enforcement officer outside of his jurisdiction. Accordingly, we must analyze the stop at issue in this matter in light of those parameters. Here, Officer Bell’s testimony indicates that he did personally observe the defendant driving 17erratically. He testified that he could see the double yellow lines of the highway underneath the defendants truck, and the video from Officer Bell’s patrol car shows the defendant swerve into the opposing lane of travel just before coming to a stop. Officer Bell testified that his patrol ear has the words “police office” on the doors. Thus, it was a marked vehicle. Once the defendant was detained, the DWI investigation was conducted by Officer Orr of the sheriffs office. Three of the four Williams factors are satisfied.
At issue is whether Officer Bell contacted an officer having jurisdiction and obtained permission to effectuate the stop. Officer Bell testified that he contacted the sheriffs office to notify them that he was making a stop. He admitted that he did not ask for permission to make the stop. There is no indication that anyone with the sheriffs office, including Officer Orr, authorized Officer Bell to make the stop. Officer Orr simply responded to a dispatch because of his location and arrived at the scene around five minutes or more after the stop was made. The state argues that when Officer Bell notified the sheriffs office that he was about to make the stop, it was “implicit that the stop was authorized by the sheriffs procedures.” This argument would render meaningless the requirement for permission from an officer with jurisdiction to make the stop.
The state further asserts that the danger to other motorists from the defendant’s driving left Officer Bell no choice but to detain him for public safety reasons. While we certainly do not fault Officer Bell for acting in the interest of public safety, the record establishes that Officer Bell did not ask 1 sfor or obtain permission from an officer with jurisdiction to effectuate the stop as required by Williams, supra, and as was done by the detaining officer in Stapa, supra. This is a specific requirement set forth by the Williams court for finding a traffic stop by an officer outside his jurisdiction to be reasonable under the Fourth Amendment. Therefore, we are *543 constrained to find on this record and in light of Williams, supra, that the trial court did not abuse its great discretion in granting the motion to suppress.
CONCLUSION
For the reasons stated, we affirm the trial court’s ruling that granted the defendant’s motion to suppress.
AFFIRMED.